# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE,
## NORTHERN DIVISION

STEPHEN TURKEWITZ
and
KATHERINE TURKEWITZ

      Plaintiffs,

vs

HOWMEDICA OSTEONICS CORP.
d/b/a STRYKER ORTHOPAEDICS,
STRYKER CORPORATION, and
STRYKER SALES, LLC,

      Defendants.

Civil Case No. _____
JURY DEMANDED

## **COMPLAINT**

Plaintiffs Stephen and Katherine Turkewitz, through counsel, and for their complaint against Defendants HOWMEDICA OSTEONICS CORPORATION d/b/a STRYKER ORTHOPAEDICS, STRYKER CORPORATION and STRYKER SALES CORPORATION (hereinafter sometimes collectively referred to as "Stryker"), states as follows:

## **INTRODUCTION AND SUMMARY OF ACTION**

1.     This is a products liability case, seeking to recover for the injuries Mr. and Mrs. Turkewitz suffered due to the corrosion and fraying of certain components of the Stryker Modular Dual Mobility ("MDM") X3 hip implant surgically implanted in Mr. Turkewitz. This MDM hip implant was designed, manufactured, and sold by Defendants. Mr. Turkewitz, who suffers from osteoarthritis in his left hip, had a left total hip replacement, utilizing a Stryker MDM hip implant, including an MDM Acetabular Liner made of a chromium cobalt alloy fit into a titanium acetabular shell in 2018.  Within two

(2) years, Mr. Turkewitz developed severe sharp left groin and hip pain. He has since been diagnosed with an adverse local tissue reaction to metal debris/corrosion from the Stryker MDM hip implant, resulting in joint dysfunction, bone loss, and component migration, requiring revision surgery on September 19, 2020.

2. Mr. Turkewitz contends that the Stryker MDM Cobalt-Chromium Liner, used in conjunction with the other components of the implant, particularly the tritanium acetabular shell contained manufacturing, design, and/or warnings defects, and that the Defendants knew or should have known of these defects and seeks to recover for his injuries.

## STATEMENT OF JURISDICTION

3. Plaintiffs Stephen and Katherine Turkewitz are residents and citizens of the State of Tennessee, residing in Loudon County, Tennessee.

4. Defendant Howmedica Osteonics Corporation, which conducts business as Stryker Orthopaedics (hereinafter "Stryker") is, and at all times relevant to this Complaint was, a New Jersey Corporation with its principal place of business at 325 Corporate Drive, Mahwah, New Jersey 07430. Stryker does business throughout the United States, including the State of Tennessee and is registered to do business in Tennessee through the Secretary of State's office. Stryker's registered agent for service of process is CT Corporation System, 300 Montvue Road, Knoxville, TN 37919.

5. Defendant, Stryker Corporation (hereinafter, "Stryker Corp."), is, and at all times relevant to this Complaint was, a Michigan Corporation with its principal place of business at 2825 Airview Boulevard, Kalamazoo, Michigan 49002. Styker Corp. does business throughout the United States, including the State of Tennessee. Stryker

Corp.'s registered agent for service of process is The Corporation Company, 40600 Ann Arbor Road, Suite 201, Plymouth, Michigan 48170.

6.    Defendant Stryker Sales, LLC f/k/a Stryker Sales Corp. (hereinafter "Stryker Sales") is, and at all times relevant to this Complaint was, a Michigan Limited Liability Company with its principal place of business at 2825 Airview Boulevard, Kalamazoo, Michigan 49002.  Styker Sales does business throughout the United States, including the State of Tennessee and is registered to do business in Tennessee through the Secretary of State's office.  Stryker's registered agent for service of process is CT Corporation System, 300 Montvue Road, Knoxville, TN 37919.

7.    At all times relevant, Defendants and each of them were the agents, ostensible agents, co-conspirators, servants, employees, partners, joint venturers, franchisees and alter-egos of the remaining defendants and each of them; and each of them were at all times and places mentioned herein acting within the course and scope of such conspiracy, service, agency, employment, partnership, joint venture and/or franchise.

8.    The matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, as this action involves a claim of products liability by an individual who suffered from multiple internal injuries and a claim for severe suffering based on, inter alia, the theories of strict liability, negligence and breach of warranty.

9.    Defendants marketed, distributed and sold orthopedic hip implants in the Eastern District of Tennessee at the time of the incident in question and are therefore

subject to personal jurisdiction within this District pursuant to 28 U.S.C. § 1391(c).

Venue is proper under 28 U.S.C. § 1391(a).

10.     The District Court has original subject matter jurisdiction in this case as involving a controversy in excess of $75,000.00, exclusive of interest and costs, between a citizen of one state (each of the Defendants) and a citizen of another state pursuant to 28 U.S.C. § 1332.

## FACTUAL ALLEGATIONS

11.     Well before Mr. Turkewitz was faced with having a total hip replacement performed, the Defendants were well aware that designing hip implant systems containing components with dissimilar metals making contact with each other caused problems.  Over the past two decades, the Defendants have recalled different hip implant systems and/or components related to the problems of fretting and corrosion when chromium and cobalt alloys as well as titanium alloys are used in combination with each other.  This results in bone loss around the hip joint, inflammation of tissue and other debilitating problems.

12.     Despite their knowledge of the problems associated with using metal on metal components, the Defendants manufactured, sold and marketed the "MDM X3 MODULAR DUAL MOBILITY MOBILE BEARING HIP SYSTEM", to the public.  The design included the use of chromium cobalt alloys in contact with titanium alloys, even though they knew, or should have known, of the danger that the device posed to the public. The Device was developed for both primary and revision total hip arthroplasty. The Defendants marketed the device touting that it offered increased stability, longevity and advanced fixation for a wide range of patients.

13.     A modular total hip replacement implant device typically consists of five separate components: a femoral stem, a femoral neck, a femoral head (or ball), a liner, and an acetabular shell (socket). Usually, these components are made of metal and plastic (and ceramic?).

14.     These Devices were marketed with the claim that they would create a better, more unique fit for each individual patient. Indeed, Defendants marketed the Device as having many advantages over other hip replacement or hip resurfacing systems.

15.     The "MDM X3 MODULAR DUAL MOBILITY MOBILE BEARING HIP SYSTEM", according to the Stryker Defendants, was designed to provide the surgeons the ability to better personalize the biomechanics of each patient's hip replacement implant.

16.     The Stryker defendants further marketed the device claiming the device would restore hip stability, improve longevity of the implant, and provide advanced fixation.

17.     As a result of the Device's defects, recipients of the Device have suffered symptoms including pain, swelling, inflammation, and damage to surrounding bone and tissue, and lack of mobility. As noted above, these symptoms are the result of possible loosening of the implant, where the implant does not stay attached to the bone in the correct position; fracture, where the bone around the implant may have broken; dislocation, where two parts of the implant that move against each other are no longer aligned; fraying involving micromotion between two metals; and the spread of metal debris generated from parts made of dissimilar metals moving against each other. For

these reasons, revision surgeries have been necessary to remove the faulty Devices. However, these revision surgeries present enormous risks to patients because they are technically more difficult than the original surgery to implant the Device, the patient is more at risk of complications and death, and the recovery time is prolonged as compared to the original hip replacement surgery.

18.     The Defendants knew or should have known that the "MDM X3 MODULAR DUAL MOBILITY MOBILE BEARING HIP SYSTEM", and its components, posed significant health risks based on the widely reported problems with the Device and other similarly designed hip implants. Even with this knowledge, the defendants recklessly and negligently sold, manufactured, marketed, and distributed the defectively designed and/or defectively manufactured the Device in complete disregard for the safety of consumer and patients, including Mr. Turkewitz.

19.     The Defendants failed to warn surgeons and other consumers, including Mr. Turkewitz, that the Device was not properly designed, manufactured, assembled and/or tested.

20.     On or about October 22, 2018, Mr. Turkewitz underwent left total hip replacement and the "MDM X3 MODULAR DUAL MOBILITY MOBILE BEARING HIP SYSTEM" and the components were inserted and/or implanted into his body.

21.     An employee and/or agent of Defendants provided the Device to Mr. Turkewitz's orthopedist, who implanted the Device on October 22, 2018.

22.     The "MDM X3 MODULAR DUAL MOBILITY MOBILE BEARING HIP SYSTEM" and components was expected to and did reach Mr. Turkewitz without

substantial change in the condition in which it was packaged, distributed, and sold by the defendants.

23. At all times material hereto, the "MDM X3 MODULAR DUAL MOBILITY MOBILE BEARING HIP SYSTEM" and components was used in a manner reasonably foreseeable to the defendants.

24. After the defendants' device was implanted, Mr. Turkewitz began to experience high levels of pain, significant loss of range of motion, numbness and global strength deficits, which caused a significant degree of difficulty with even basic activities of daily living.

25. After the defendants' device was implanted, his medical providers confirmed joint dysfunction, bone loss, fracture and component migration related to an adverse reaction to metal debris/corrosion from the Stryker MDM hip implant.

26. As a result of the defendants' conduct, on September 18, 2020, Mr. Turkewitz underwent a total hip revision.

27. As a direct and proximate result of the defendant's conduct, Mr. Turkewitz was implanted with the Device, and had debilitating pain and other complications and required revision surgery to replace the Device. Due to the injuries to Mr. Turkewitz, his wife, Katherine Turkewitz has experienced the loss of consortium, loss of society, affection, assistance, and fellowship with her husband.

28. During all material times, Mr. and Mrs. Turkewitz have been residents of the State of Tennessee.

29. On numerous occasions, Defendants met with orthopedic surgeons, including, on information and belief, with Mr. Turkewitz's orthopedic surgeon, to promote

"MDM X3 MODULAR DUAL MOBILITY MOBILE BEARING HIP SYSTEM" and components. At some or all of these meetings, a representative or representatives of Stryker was present. During these meetings, Stryker assured the orthopedic surgeons, including Mr. Turkewitz's orthopedic surgeon, that the MDM X3 Modular Dual Mobility Mobile Bearing Hip System and components was safe, effective, was the best product on the market, had an excellent track record, had very low wear, would last longer than traditional hip implants and had a low and acceptable failure rate. Stryker continued to "defend" the Device even after they became aware of numerous and serious complications with it. Stryker did not reveal their knowledge of numerous and serious complications and other "bad data" during their meetings with orthopedic surgeons, including Mr. Turkewitz's orthopedic surgeon.

30.    Mr. Turkewitz's revision surgery has subjected him to much greater risks of future complications than he had before the revision surgery.

31.    Mr. Turkewitz suffered and continues to suffer injuries resulting and caused from the defective Device including and not limited to substantial pain and suffering, loss of mobility, loss of enjoyment of life, risk of life and emotional distress.

32.    Defendants and their agents, apparent agents, servants and/or employees are liable and legally responsible to Mr. Turkewitz for his injuries and damages pursuant to Titles 15 and 21 of the United States Code, Title 21 of the Code of Federal Regulations, Tennessee Products Liability Act of 1978, Tennessee Consumer Protection Act, and common law negligence, in one or more of the following respects in that they:

      a.    placed into the market and into the stream of commerce, products, including MDM X3 Modular Dual Mobility Mobile Bearing Hip System and

components, that were defective in design and materials and unreasonably dangerous;

b.     misrepresented to the general public, including Mr. Turkewitz, that the MDM X3 Modular Dual Mobility Mobile Bearing Hip System and components were safe for their intended uses;

c.     designed, tested, manufactured, assembled, labeled, distributed, marketed, promoted and/or sold the MDM X3 Modular Dual Mobility Mobile Bearing Hip System and components that were dangerous and could not be used for its intended purpose without unreasonable risk of injury to persons including Mr. Turkewitz;

d.     knew or should have known of the dangerous propensities of said MDM X3 Modular Dual Mobility Mobile Bearing Hip System and components yet continued its manufacture, distribution, assembly, promotion, marketing, and sales for substantial profit with complete disregard for the safety of consumers and patients such as Mr. Turkewitz;

e.     failed to adequately and properly test the MDM X3 Modular Dual Mobility Mobile Bearing Hip System and components to ensure that it was free from defects and able to perform properly;

f.     failed to adequately design and manufacture the MDM X3 Modular Dual Mobility Mobile Bearing Hip System and components to ensure that they would not corrode, erode, deteriorate, or cause a medical toxicity in patients including Mr. Turkewitz;

g.     breached the implied warranty of merchantability and fitness and that the MDM X3 Modular Dual Mobility Mobile Bearing Hip System and components was not of merchantable quality or fit for its intended purpose;

h.     breached its express warranty made through their marketing campaigns, promotional activities, product labeling, package inserts, and/or written and verbal assurances that the MDM X3 Modular Dual Mobility Mobile Bearing Hip System and components was safe and effective for use;

i.     failed to timely report adverse events, failures and malfunctions regarding the MDM X3 Modular Dual Mobility Mobile Bearing Hip System and components:

j.     failed to timely and adequately investigate adverse events, failures and malfunctions regarding the MDM X3 Modular Dual Mobility Mobile Bearing Hip System and components;

k.      failed to adequately and properly maintain records and/or reports regarding death, serious injury, and/or malfunction to ensure the safety and effective ness of the MDM X3 Modular Dual Mobility Mobile Bearing Hip System and components;

l.      failed to adequately and properly follow and monitor the product once placed into the stream of commerce to determine any side effects including its potential to cause injury;

m.      failed to provide adequate warning regarding the propensity of the MDM X3 Modular Dual Mobility Mobile Bearing Hip System and components to cause injury;

n.      failed to warn the public including Mr. Turkewitz that the MDM X3 Modular Dual Mobility Mobile Bearing Hip System and components was likely to fail and require complex revision surgery;

o.      failed to comply with federal requirements and regulations;

p.      failed to timely report adverse events, failures, and malfunctions, regarding the MDM X3 Modular Dual Mobility Mobile Bearing Hip System and components pursuant to 21 CFR Sec. 803.53;

q.      failed to timely and adequately investigate adverse events, failures and malfunctions regarding the MDM X3 Modular Dual Mobility Mobile Bearing Hip System and components pursuant to 21 CFR Sec. 803.50;

r.      failed to timely and adequately report any and all information concerning product failures, and corrections pursuant to 21 CFR Sec. 803.52;

s.      failed to timely and/or adequately report to the FDA including a trend analysis of adverse events, any reportable MDR events regarding the MDM X3 Modular Dual Mobility Mobile Bearing Hip System and components that necessitate remedial action to prevent an unreasonable risk of substantial harm to the public including Mr. Turkewitz pursuant to 21 CFR Sec. 803.53;

t.      failed to timely and adequately report device corrections and/or removals regarding the MDM X3 Modular Dual Mobility Mobile Bearing Hip System and components pursuant to 21 CFR Sec. 806;

u.      failed to comply with FDA quality system requirements and regulations regarding design control, design, design validation, perfect performance and efficiency, and manufacturing and production standards pursuant to 21 CFR Sec. 820;

v.     failed to adequately and properly maintain records and/or reports regarding death, serious injury, and/or malfunction to assure the safety and effective ness of the MDM X3 Modular Dual Mobility Mobile Bearing Hip System and components to 21 U.S.C. Sec. 360(i);

w.     failed to timely and fully inform the FDA of unanticipated adverse effects, increases in the evidence of adverse effects, or device failures necessitating labeling, manufacturing, or device modification;

x.     marketed, distributed, and/or sold a misbranded product in violation of 21 U.S.C. Sec. 352;

y.     marketed, distributed, and/or sold an adulterated product in violation of 21 U.S.C. Sec. 351.

## FIRST CAUSE OF ACTION: NEGLIGENCE AGAINST DEFENDANTS

33.     Mr. Turkewitz incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

34.     Defendant had a duty to exercise reasonable care in designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control, and/or distribution of the Device into the stream of commerce, including a duty to assure that the Device would not cause those who had it surgically implanted to suffer adverse harmful effects from it.

35.     Defendant failed to exercise reasonable care in designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control, and/or distribution of the Device into interstate commerce in that Defendant knew or should have known that those individuals that had the Device surgically implanted were at risk for suffering harmful effects from it, including but not limited to,

partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery to replace the Device with the attendant risks of complications and death from such further surgery.

36. The negligence of the Defendants, its agents, servants, and/or employees, included but not limited to the following acts and/or omissions:

      a. Negligently designing the Device in a manner which was dangerous to those individuals who had the Device surgically implanted;

      b. Designing, manufacturing, producing, creating, and/or promoting the Device without adequately, sufficiently, or thoroughly testing it;

      c. Not conducting sufficient testing programs to determine whether or not the aforesaid Device was safe for use;

      d. Defendants herein knew or should have known that the Device was unsafe and unfit for use by reason of the dangers to its users;

      e. Selling the Device without making proper and sufficient tests to determine the dangers to its users;

      f. Negligently failing to adequately and correctly warn Mr. Turkewitz or Mr. Turkewitz's physicians, hospitals and/or healthcare providers of the dangers of the Device;

      g. Negligently failing to recall their dangerous and defective Device at the earliest date that it became known to the Defendants that the Device was, in fact, dangerous and defective;

h.     Failing to provide adequate instructions regarding safety precautions to be observed by surgeons who would reasonably and foreseeably come into contact with, and more particularly, implant the Device into their patients;

i.     Negligently advertising and recommending the use of the Device despite the fact that Defendants knew or should have known of its dangerous propensities;

j.     Negligently representing that the Device offered was safe for use for its intended purpose when, in fact, it was unsafe;

k.     Negligently manufacturing the Device in a manner which was dangerous to those individuals who had it implanted;

l.     Negligently producing the Device in a manner which was dangerous to those individuals who had it implanted;

m.     Negligently assembling the Device in a manner which was dangerous to those individuals who had it implanted;

n.     Defendants under-reported, underestimated and downplayed the serious danger of the Device;

o.     Failed to use due care in designing and manufacturing the Device so as to avoid the aforementioned risks to individuals that had the Devices surgically implanted;

p.     Failed to accompany their product with proper warnings;

q.     Failed to accompany their product with proper instructions for use;

r.    Failed to conduct adequate testing, including pre-clinical and clinical testing and post marketing surveillance to determine the safety of the Device;

s.    Willful, reckless and wanton misconduct in allowing this dangerous Device to be implanted in human beings without sufficient testing and with express knowledge of enhanced risks; and

t.    Were otherwise careless and/or negligent.

37.    Despite the fact that Defendants knew or should have known that the Device caused harm to individuals that had the Device surgically implanted, Defendants continued to market, manufacture, distribute and/or sell the Device.

38.    Defendants knew or should have known that consumers such as Mr. Turkewitz would suffer foreseeable injury, and/or be at increased risk of suffering injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

39.    Defendants' negligence was the proximate cause of Mr. Turkewitz's physical, mental and emotional injuries and harm, and economic loss which Mr. Turkewitz has suffered and/or will continue to suffer.

40.    By reason of the foregoing, Mr. Turkewitz experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery to replace the Device with the attendant risks of complications and death from such further surgery, in a sum

greater than the jurisdictional limitations of all lower courts which would otherwise have jurisdiction.

41.     Further, as a result of the foregoing acts and omissions, Mr. Turkewitz has suffered and/or will in the future suffer lost wages and a diminished capacity to earn wages.

42.     In performing the foregoing acts and omissions, Defendant acted despicably, fraudulently, and with malice and oppression to justify an award of punitive and exemplary damages.

## SECOND CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY (MANUFACTURING DEFECT) AGAINST DEFENDANT

43.     Mr. Turkewitz incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

44.     Defendant designed, manufactured, tested, marketed and distributed the Device into the stream of commerce.

45.     The Device that was surgically implanted in Mr. Turkewitz was defective in its manufacture when it left the hands of Defendants in that it deviated from product specifications, posing a serious risk that it could fail early in patients therefore giving rise to physical injury, pain and suffering, debilitation, and the need for a revision surgery to replace the Device with the attendant risks of complications and death from such further surgery.

46.     As a direct and proximate result of Defendants placement of the defective Device into the stream of commerce, Mr. Turkewitz experienced and/or will experience

severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery to replace the Device with the attendant risks of complications and death from such further surgery.

47.     Further, as a result of the foregoing acts and omissions, Mr. Turkewitz has suffered and/or will in the future suffer lost wages and a diminished capacity to earn wages.

48.     In performing the foregoing acts and omissions, Defendants acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages.

## THIRD CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY (DESIGN DEFECT) AGAINST DEFENDANTS

49.     Mr. Turkewitz incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

50.     At all times herein mentioned, Defendant designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Device as hereinabove described that was surgically implanted in Mr. Turkewitz.

51.     At all times herein mentioned, the Device was in an unsafe, defective, and inherently dangerous condition for users such as Mr. Turkewitz that had the Device surgically implanted.

52.     The Device was in an unsafe, defective, and inherently dangerous condition at the time it left Defendants' possession.

53.     At all times herein mentioned, the Device was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was designed, produced, manufactured, sold, distributed, and marketed by Defendant.

54.     The Device's unsafe, defective, and inherently dangerous condition was a cause of injury to Mr. Turkewitz.

55.     The Device failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

56.     Mr. Turkewitz's injuries resulted from use of the Device that was both intended and reasonably foreseeable by Defendant.

57.     At all times herein mentioned, the Device posed a risk of danger inherent in the design which outweighed the benefits of that design.

58.     At all times herein mentioned, the Device was defective and unsafe, and Defendants knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by Defendants. At all times herein mentioned, the Defendant knew, or should have known, that the Device was in a defective condition, and was and is inherently dangerous and unsafe.

59.     At the time of the implantation of the Device into Mr. Turkewitz, the aforesaid product was being used for the purposes and in a manner normally intended, namely for use as a hip replacement device.

60.     Defendants, with this knowledge, voluntarily designed their Device in a dangerous condition for use by the public and, in particular, Mr. Turkewitz.

61.     Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

62.     Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which, when used in its intended or ' reasonably foreseeable manner, created an unreasonable risk to the health of consumers and to Mr. Turkewitz, in particular, and Defendants are therefore strictly liable for the injuries sustained by Mr. Turkewitz.

63.     As a direct and proximate result of Defendants placement of the defective Device into the stream of commerce, Mr. Turkewitz experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery to replace the Device with the attendant risks of complications and death from such further surgery.

64.     Further, as a result of the foregoing acts and omissions, Mr. Turkewitz has suffered and/or will in the future suffer lost wages and a diminished capacity to earn wages. Steve has been and remains fully retired.

65.     In performing the foregoing acts and omissions, Defendants acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages.

{21067/375863/2}

## FOURTH CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY (INADEQUATE WARNING) AGAINST DEFENDANT

66.     Mr. Turkewitz incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

67.     Defendant designed, manufactured, tested, marketed and distributed into the stream of commerce the Device. The Device placed into the stream of commerce by Defendant was defective due to inadequate warning, because Defendants knew or should have known that the Device could fail early in patients and therefore give rise to physical injury, pain and suffering, debilitation, and the need for a revision surgery to replace the Device with the attendant risks of complications and death from such further surgery but failed to give consumers adequate warning of such risks.

68.     Further, the Device placed into the stream of commerce by Defendant was surgically implanted in a manner reasonably anticipated by Defendant.

69.     As a direct and proximate result of Defendant's placement of the defective Device into the stream of commerce, Mr. Turkewitz experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery to replace the Device with the attendant risks of complications and death from such further surgery.

70.     Further, as a result of the foregoing acts and omissions, Mr. Turkewitz has suffered and/or will in the future suffer lost wages and a diminished capacity to earn wages.

71.     In performing the foregoing acts and omissions, Defendant acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages.

## FIFTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY AGAINST DEFENDANT

72.     Mr. Turkewitz incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

73.     Defendant designed, manufactured, tested, marketed and distributed the Device into the stream of commerce.

74.     Defendant expressly warranted that the Device was a safe and effective hip replacement system and that it would fit better than traditional monolithic femoral stems and was thus appropriate for young and active patients.

75.     Indeed, as set forth in detail above, Defendant made numerous representations about the quality, safety, effectiveness and expected lifetime of the Device which form express warranties.

76.     The Device placed into the stream of commerce by Defendant did not conform to these express representations because they failed early thereby giving rise to unnecessary physical injury, pain and suffering, debilitation, and the need for a revision surgery to replace the Device with the attendant risks of complications and death from such further surgery. As a direct and proximate result of Defendant's breach of express warranties regarding the safety and effectiveness of the Device, Mr. Turkewitz experienced and/or will experience significant damages, including but not

limited to physical injury, economic loss, pain and suffering, and surgery to replace the faulty Device, and will continue to suffer such damages in the future.

77.     In taking the actions and omissions that caused these damages, Defendant was guilty of malice, oppression and fraud, and Mr. Turkewitz is therefore entitled to recover punitive damages.

## SIXTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANY OF MERCHANTABILITY AGAINST DEFENDANTS

78.     Mr. Turkewitz incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

79.     Defendant designed, manufactured, tested, marketed and distributed into the stream of commerce the Device.

80.     At the time Defendant designed, manufactured, tested, marketed and distributed into the stream of commerce the Device, Defendant knew the use for which the Device was intended, and impliedly warranted the Device to be of merchantable quality.

81.     Mr. Turkewitz reasonably relied upon the skill and judgment of Defendant as to whether the Device was of merchantable quality.

82.     Contrary to Defendant's implied warranties, the Device was not of merchantable quality or safe for the ordinary purposes for which it was to be used, because the Device was unreasonably dangerous and/or not reasonably fit for its intended, anticipated or reasonably foreseeable use as described above.

83.     As a direct and proximate result of Defendant's breach of implied warranties regarding the safety and effectiveness of the Device, Mr. Turkewitz experienced and/or will experience significant damages, including but not limited to physical injury, economic loss, pain and suffering, and surgery to replace the faulty Device, and will continue to suffer such damages in the future.

84.     In taking the actions and omissions that caused these damages, Defendant was guilty of malice, oppression and fraud, and Mr. Turkewitz is therefore entitled to recover punitive damages.

## SEVENTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AGAINST DEFENDANT

85.     Mr. Turkewitz incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

86.     Defendant designed, manufactured, tested, marketed and distributed into the stream of commerce the Device.

87.     At the time Defendant designed, manufactured, tested, marketed and distributed into the stream of commerce the Device, Defendant knew the use for which the Device was intended, and impliedly warranted the Device to be safe for such use.

88.     Mr. Turkewitz reasonably relied upon the skill and judgment of Defendant as to whether the Device was safe for its intended use.

89.     Contrary to Defendant's implied warranties, the Device was not safe for its intended use or fit for the particular purpose for which it was designed, manufactured, tested, distributed or sold - for use and implantation as a total hip replacement system,

because the Device was unreasonably dangerous and/or not reasonably fit for its intended, anticipated or reasonably foreseeable use as described above.

90.     As a direct and proximate result of Defendant's breach of implied warranties regarding the safety and effectiveness of the Device, Mr. Turkewitz experienced and/or will experience significant damages, including but not limited to physical injury, economic loss, pain and suffering, and surgery to replace the faulty Device, and will continue to suffer such damages in the future.

91.     In taking the actions and omissions that caused these damages, Defendant was guilty of malice, oppression and fraud, and Mr. Turkewitz is therefore entitled to recover punitive damages.

## EIGHTH CAUSE OF ACTION
## VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT OF 1977
## AGAINST ALL DEFENDANTS

92.     Mr. Turkewitz incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

93.     Defendants unfairly, unconscionably, and deceptively advertised, marketed, sold, and represented the Device as a high-quality, safe and effective hip replacement system to Mr. Turkewitz and Mr. Turkewitz's physicians.

94.     Before they advertised, marketed, sold and represented the Device that was implanted in Mr. Turkewitz, Defendants knew or should have known of the unreasonable dangers and serious health risks that such a metal-on-metal total hip replacement system posed to patients like Mr. Turkewitz.

95.     Mr. Turkewitz purchased and used the Device for personal use and thereby suffered ascertainable losses as a result of Defendant's actions in violation of the consumer protection laws.

96.     Had Defendants not engaged in the deceptive conduct described herein, Mr. Turkewitz would not have purchased and/or paid for the Devices and would not have incurred related medical costs and injury.

97.     Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, moneys from Mr. Turkewitz for the Device that would not have been paid had Defendants not engaged in unfair and deceptive conduct.

98.     Unfair methods of competition or deceptive acts or practices that were proscribed by law, including the following: representing that goods or services have characteristics, ingredients, uses, benefits or quantities that they do not have; advertising goods or services with the intent not to sell them as advertised; and engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

99.     Mr. Turkewitz was injured by the cumulative and indivisible nature of Defendants' conduct.

100.    The cumulative effect of Defendants' conduct directed at patients, physicians and consumers was to create demand for and sell the Device.

101.    Each aspect of Defendants' conduct combined to artificially create sales of the Device.

102. Defendants have a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, development, manufacture, promotion, and sale of the Device.

103. Had Defendants not engaged in the deceptive conduct described above, Mr. Turkewitz would not have purchased and/or paid for the Device and would not have incurred related medical costs.

104. Defendants' deceptive, unconscionable, or fraudulent representations and material omissions to patients, physicians and consumers, including Mr. Turkewitz, constituted unfair and deceptive acts and trade practices in violation of the State consumer protection statutes listed. Defendant's actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts, or trade practices in violation of state consumer protection statutes.

105. Defendants have engaged in unfair competition or unfair or deceptive acts or trade practices or have made false representations in violation of Tenn. Code Ann. §§47-18-101 et seq..

106. Under the statute listed above to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, Defendant are the suppliers, manufacturers, advertisers, and sellers, who are subject to liability under such legislation for unfair, deceptive, fraudulent and unconscionable consumer sales practices.

107. Defendants violated the statutes that were enacted in these states to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, by knowingly and falsely representing that the

Device was fit to be used for the purpose for which it was intended, when in fact the Device was defective and dangerous, and by other acts alleged herein. These representations were made in uniform promotional materials.

108. The actions and omissions of Defendants alleged herein are uncured or incurable deceptive acts under the statutes enacted in the states to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices.

109. Defendants' deceptive, unconscionable or fraudulent representations and material omissions to patients, physicians and consumers, constituted unfair and deceptive acts and practices.

110. By reason of the unlawful acts engaged in by Defendants, and as a direct and proximate result thereof, Mr. Turkewitz has suffered ascertainable losses and damages.

111. As a direct and proximate result of Defendants' violations of the State's consumer protection laws, Mr. Turkewitz has sustained economic losses and other damages and is entitled to statutory and compensatory, damages in an amount to be proven at trial.

112. As specifically described in detail above, Defendant knew that the Device subjected patients to early failure, painful and harmful physical reactions, death of tissue, bone loss and the need for explants and revision surgery.

113. As a direct and proximate result of Defendant's representations, Mr. Turkewitz has experienced and/or will experience significant damages, including but not limited to permanent physical injury, economic loss, pain and suffering and underwent revision surgery to repair the physical damage caused by the Device.

114. Violation of the Tennessee Consumer Protection Act of 1977 by the Defendants, as set forth herein above, entitles Mr. Turkewitz to treble damages and attorney fees.

## NINTH CAUSE OF ACTION
## LOSS OF CONSORTIUM

115. Mr. Turkewitz and Mrs. Turkewitz incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

116. As a direct and proximate result of the acts, omissions, breaches, failures and/or conduct of the Defendants as specifically pled herein above, Plaintiff Katherine Turkewitz has suffered a loss of consortium, loss of society, affection, assistance, and conjugal fellowship of her husband and partner Stephen Turkewitz, all to the detriment of their marital relationship.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Turkewitz prays for the following relief:

I. That process be issued and all Defendants be served, and that a jury be empaneled to hear the issues joined;

II. Judgment by a jury in favor of Mr. Turkewitz and against Defendants, for damages in such amounts as may be proven at trial;

II. Compensation for both economic and non-economic losses, including but not limited to medical expenses, loss of earnings, disfigurement, permanent injury, pain and suffering, mental anguish, emotional distress and loss of enjoyment of life, in such amounts as may be proven at trial;

III.     Punitive and/or exemplary damages, including treble damages, in such amounts as may be proven at trial;

IV.     Attorney's fees and costs;

Such further other legal and equitable relief as the Court may deem just and proper.

Respectfully submitted,

s/Bruce D. Fox
BRUCE D. FOX (BPR#8965)
JOHN A. WILLIS (BPR#018468)
Attorneys for Plaintiffs
FOX FARLEY WILLIS & BURNETTE
310 N. Main Street
Clinton, TN 37716
T: 865.457.6440
F: 865.457.6322
john@foxlawtn.com

ROBERT M. TURKEWITZ
S.C. Fed. ID No. 4902
768 St. Andrews Blvd
Charleston, SC 29412
T: 843.628.7868
F: 843.277.1438
rob@mrtlegal.com

BRIAN M. KNOWLES
S.C. Fed ID No. 9694
768 St. Andrews Blvd
Charleston, SC 29412
T:  843.810.7596
F: 877.408.1078
brian@knowlesinternational.com